<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit

                      ____________________

No. 97-1602

     FUTURA DEVELOPMENT OF PUERTO RICO, INC., ETC., ET AL.,

                    Plaintiffs - Appellees,

                               v.

             ESTADO LIBRE ASOCIADO DE PUERTO RICO,
          THE COOPERATIVE DEVELOPMENT ADMINISTRATION,
              THE COOPERATIVE DEVELOPMENT COMPANY,

                    Defendants - Appellants.

                      ____________________

No. 97-1603

            FUTURA DEVELOPMENT OF PUERTO RICO, INC.,

                     Plaintiff - Appellant,

                               v.

             ESTADO LIBRE ASOCIADO DE PUERTO RICO,
          THE COOPERATIVE DEVELOPMENT ADMINISTRATION,
              THE COOPERATIVE DEVELOPMENT COMPANY,

                    Defendants - Appellees.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

        [Hon. Salvador E. Casellas, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

               Boudin and Stahl, Circuit Judges.

                     _____________________

   Jay A. Garca-Gregory, with whom Fiddler, Gonzlez &
Rodrguez, Paul B. Smith, Jr. and Smith & Nevares were on brief for
appellant Commonwealth of Puerto Rico.
   Alan M. Dershowitz, with whom Amy Adelson, Victoria B. Eiger,
Nathan Z. Dershowitz, Dershowitz & Eiger, P.C., Geoffrey Woods and
Woods & Woods were on brief for appellee/cross appellant Futura
Development of Puerto Rico, Inc.
   Cherie K. Durand, with whom Law Offices Benjamn Acosta, Jr.was on brief for defendants-appellees.

                      ____________________

                         May 6, 1998
                      ____________________

         TORRUELLA, Chief Judge.  In an earlier proceeding, the
predecessor of plaintiff Futura Development of Puerto Rico, Inc.
("Futura") obtained a judgment against the Cooperative Development
Company ("CDC"), a public corporation and instrumentality of the
Commonwealth of Puerto Rico, in the amount of $12,266,000.  SeeU.S.I. Properties Corp. v. M.D. Construction Co., 860 F.2d 1 (1st
Cir. 1988).  After CDC failed to satisfy the judgment, Futura
brought this suit seeking a determination that CDC was an alter ego
of the Commonwealth of Puerto Rico, and that, as a de facto party
to the earlier litigation, the Commonwealth was liable for the
judgment.  On this theory of recovery, Futura was awarded summary
judgment.  See Futura Devel. of P.R. v. Puerto Rico, 962 F. Supp.
248 (D.P.R. 1997).  Futura also brought six other claims against
individual government employees under various causes of action, all
of which were dismissed by the district court sua sponte.  See id.  
The parties cross-appealed to this court.  We conclude that the
district court acted without proper jurisdiction in awarding
summary judgment to Futura on its alter ego theory and improperly
dismissed the remaining claims against the individual defendants.
                           Background
         On October 25, 1988, this court affirmed a district court
judgment entered pursuant to a jury verdict against CDC for
$12,266,000.  See U.S.I., 860 F.2d 1.  The jury found that CDC had
unilaterally terminated a construction contract with M.D.
Construction, predecessor in interest to Futura, which provided for
the building of a low-income housing project called "Ciudad
Cristiana."  The jury in that case rejected CDC's cross-claims
alleging that the Ciudad Cristiana property was contaminated with
mercury.  Jurisdiction in that case was premised entirely upon
diversity.  See id.  Now, almost ten years later, this court is
faced with the current dispute over satisfaction of that judgment.
         CDC is a public corporation that was created by the
Puerto Rico Legislative Assembly in order to develop housing
cooperatives across Puerto Rico.  See P.R. Laws Ann. Tit. 5,  981
et seq.  A majority of the CDC's budget each year is provided by
the Commonwealth.  Since the original litigation, the Commonwealth
has engaged in a de facto liquidation of CDC in order to avoid
satisfying the sizable judgment pending against it.  Specifically,
the Commonwealth has failed to provide for satisfaction of the
judgment in CDC's budgets, stripped CDC of its assets, transferred
its employees, and replaced CDC in the organizational chart of
Commonwealth agencies and public corporations.  During its
liquidation, CDC settled debts with some creditors, but not with
Futura.  CDC, insolvent and devoid of official responsibility, now
exists in name only.
         Futura, frustrated by these tactics, brought this suit
against the Commonwealth in federal court under the court's
enforcement jurisdiction.  Futura argues that the Commonwealth of
Puerto Rico is liable for the original judgment because it was a de
facto party to the original litigation.  This assertion is
supported not only by the generally close relationship between the
Commonwealth and the CDC, but specifically by the fact that the
Attorney General of Puerto Rico took over the original litigation
for CDC.  Furthermore, in its closing argument to the jury in that
original litigation, CDC argued that any judgment against it would
have to be paid with Puerto Rico tax dollars.
         The Commonwealth argues that, even if CDC were its "alter
ego," it retains Eleventh Amendment immunity from this suit in
federal court.  Despite its active participation in the defense of
the original suit and use of the "tax dollars" argument with the
jury, the Commonwealth asserts that it did not implicitly waive its
immunity.  The district court disagreed, awarding summary judgment
in Futura's favor on the first count, and dismissing sua sponteFutura's remaining claims against the individual defendants.  See962 F. Supp. at 257-58.  Because we conclude that the district
court acted without proper jurisdiction, we do not reach the
questions raised regarding implicit waiver of Eleventh Amendment
immunity.
                            Analysis
I.  Enforcement Jurisdiction
         The first question to be resolved in this case is whether
the district court properly exercised jurisdiction over Futura's
claim against the Commonwealth.  The parties acknowledge that
federal question jurisdiction is inapplicable to Futura's alter ego
claim, and that the Commonwealth of Puerto Rico is not subject to
diversity jurisdiction.  Cf. 28 U.S.C.  1332(d) (Puerto Rico
treated as a "state" for purposes of the statute, and therefore not
subject to diversity jurisdiction); Nieves v. University of P.R.,
7 F.3d 270, 272 (1st Cir. 1993).  Futura's primary jurisdictional
argument is that federal jurisdiction over the alter ego claim
against the Commonwealth of Puerto Rico is premised upon federal
enforcement jurisdiction.  However, in actions such as this, where
the district court had original jurisdiction founded solely on
diversity jurisdiction, extending enforcement jurisdiction over a
non-diverse party without sound reasons for doing so may represent
an impermissible expansion of federal jurisdiction.  At the same
time, it is generally recognized that "without jurisdiction to
enforce a judgment entered by a federal court, 'the judicial power
would be incomplete and entirely inadequate to the purposes for
which it was conferred by the Constitution.'"  Peacock v. Thomas,
516 U.S. 349, 356 (1996) (quoting Riggs v. Johnson County, 6 Wall.
166, 187 (1868)).  Futura argues that under the doctrine of
enforcement jurisdiction, federal courts generally possess
jurisdiction over new proceedings in which a federal judgment
creditor seeks to impose liability for a judgment on a person or
entity not named in the original judgment, even where there is no
independent basis for federal jurisdiction.  However, Futura's
argument fails in light of recent Supreme Court doctrine.
         In Peacock, the Supreme Court explained that it had
"never authorized the exercise of [enforcement] jurisdiction in a
subsequent lawsuit to impose an obligation to pay an existing
federal judgment on a person not already liable for that judgment."  
Id. at 357.  In that case, Thomas, the plaintiff, had obtained a
large ERISA class action judgment against his former employer, Tru-
Tech, Inc.  Instead of paying the judgment, Peacock, an officer and
shareholder of Tru-Tech, settled Tru-Tech's debts with other
creditors, including himself, and ignored the debt owed to Thomas.  
After collection efforts proved unsuccessful, Thomas sued Peacock
in federal court using a "veil-piercing" rationale.  Despite the
absence of an independent jurisdictional basis for the proceeding,
the district and circuit courts agreed to exercise enforcement
jurisdiction in piercing the corporate veil.  The Supreme Court
reversed, explaining that there was insufficient factual dependence
between the claims raised in Thomas' suits to justify the extension
of enforcement jurisdiction.  See id. at 354-55.  
         Through Peacock, the Court reaffirmed the doctrine that
"[i]n a subsequent lawsuit involving claims with no independent
basis for jurisdiction, a federal court lacks the threshold
jurisdictional power that exists when ancillary claims are asserted
in the same proceeding as the claims conferring federal
jurisdiction."  Id. at 355 (citing Kokkonen v. Guardian Life Ins.
Co., 511 U.S. 375, ___, 114 S. Ct. 1673, 1671 (1994); H.C. Cook Co.v. Beecher, 217 U.S. 497, 498-99 (1910)).  The Court reasoned that,
while a proper exercise of enforcement jurisdiction will result in
efficiencies which outweigh comity concerns, an exercise of
enforcement jurisdiction over a factually independent proceeding
has no practical benefit for judicial economy.  See id. at 355-56.  
Where a plaintiff plans to use the federal court to examine the
defendant's identity and finances, as Thomas did in his veil-
piercing claim, the court is asked to delve into a new and separate
matter, and an independent basis for jurisdiction is required.  
This situation is distinguishable from where a party uses a post-
judgment proceeding to challenge or revisit an issue or
determination made by the federal court in the original proceeding.
         Futura attempts to distinguish Peacock on two grounds.  
First, Futura argues that, under Peacock, enforcement jurisdiction
will only be refused where the new defendant's liability is
premised upon that party's actions which took place after the
original judgment was rendered.  According to Futura, the
Commonwealth's liability stems from its actions before and duringthe original litigation, so Peacock is inapposite.  This nuanced
interpretation misses the rationale of the case.
         Peacock holds that enforcement jurisdiction does not
exist in a subsequent lawsuit to impose an obligation to pay an
existing federal judgment on a new defendant whenever the new
proceeding lacks factual dependence upon the old proceeding.  
Obviously, subsequent proceedings based upon defendant's actions
occurring after the original proceeding will necessarily be
factually independent from the primary proceeding.  However,
Peacock is broader than that.  Extending enforcement jurisdiction
to factually independent subsequent proceedings will not serve the
purpose of judicial efficiency whether those proceedings premise
liability upon pre- or post-judgment actions.  Peacock does not
limit itself, explicitly or implicitly, as Futura argues.  
Moreover, Peacock's discussion of other relevant circuit and
Supreme Court case law confirms that its holding is as broad as
dictated by its logic.
         The Peacock Court specifically declared that it had
granted certiorari to resolve a split among the various federal
courts of appeals.  See id. at 352, comparing Thomas v. Peacock, 39
F.3d 493 (4th Cir. 1994); Argento v. Melrose Park, 838 F.2d 1483
(7th Cir. 1988); Skevofilax v. Quigley, 810 F.2d 378 (3d Cir. 1987)
(en banc) and Blackburn Truck Lines, Inc. v. Francis, 723 F.2d 730
(9th Cir. 1984) with Sandlin v. Corporate Interiors Inc., 972 F.2d
1212 (10th Cir. 1992) and Berry v. McLemore, 795 F.2d 452 (5th Cir.
1986).  In both Sandlin and Berry, the two cases that Peacockultimately supports, the circuit courts refused to exercise
enforcement jurisdiction over factually independent subsequent
proceedings where the new defendants' liability was premised upon
those parties' actions before the original judgments were rendered.  
Furthermore, in H.C. Cook Co. v. Beecher, a 1910 case reaffirmed by
the Court in Peacock, the Court held that enforcement jurisdiction
would be refused to parties attempting to make new defendants
answerable for an earlier judgment.  Beecher also involved alleged
liability on the part of new defendants based upon those
defendants' pre-judgment actions.  See Beecher, 217 U.S. at 498-99;
Thomas v. Peacock, 39 F.3d 493, 500-01 (4th Cir. 1994).  The
Peacock Court stated that Beecher was binding upon it.  See 516
U.S. at 357-58.  Thus it is clear that Peacock's holding is not
limited to subsequent proceedings in which the new defendant's
liability is premised upon that party's post-judgment actions.  
         Futura's other attempt to distinguish Peacock is futile
as well.  Futura claims that since the Commonwealth is the alter
ego of CDC, the Commonwealth is not really a "new" defendant.  
According to this argument, whereas Peacock was not liable for the
primary judgment until after the subsequent hearing, the
Commonwealth was liable to Futura from the moment that the jury
returned its verdict in the original proceeding.  Thus, the
viability of Futura's argument depends entirely upon our ruling
that, unlike a generic veil-piercing claim, which represents a
substantive rule of liability, an alter ego claim is a mere factual
determination that identifies an original judgment debtor.
         Although we do not discount the possibility that some
other alter ego claims can be so characterized, in this case, the
Commonwealth and CDC are undeniably seperate jural entities, and
CDC (but not the Commonwealth) was the original judgment debtor.  
See P.R. Laws Ann. tit. 5,  981(d) (stating that the Commonwealth
is not liable for the debts of CDC).  It is clear, then, that this
alter ego claim seeks to do more than simply identify the original
judgment debtor.  
         It cannot be denied that this case is separate from the
original proceeding.  Like the veil-piercing claim in Peacock, an
alter ego claim involves an independent theory of liability under
equity, complete with new evidence.  See Note, Piercing the
Corporate Law Veil: The Alter Ego Doctrine Under Federal Common
Law, 95 Harv. L. Rev. 853, 853 n.1 (veil-piercing and alter ego
claims are part of the same doctrine).  Although a judgment
entered pursuant to such a finding can affect previously existing
judgments and other debts, the claim requires a subsequent and
distinct inquiry from the court.
         To adopt Futura's argument, we would be forced to treat
the corporate form of CDC as a complete nullity -- to look through
its legal identity to the party standing behind it -- and to do so
under the guise of making a factual determination necessary to
determine our subject matter jurisdiction over this case.  Cf.United States v. United Mine Workers, 330 U.S. 258, 292 n.5 (1947).  
This would be an unwarranted expansion of our jurisdiction.  Alter
ego/veil-piercing claims involve a substantive theory for imposing
liability upon entities that would, on first blush, not be thought
liable for a tort or on a contract.  See, e.g., Resolution Trust
Corp. v. Smith, 53 F.3d 72, 79-80 (5th Cir. 1995); Thomas v.
Peacock, 39 F.3d 493, 499 (4th Cir. 1994), rev'd on other grounds,
116 S. Ct. 862 (1996).
         Thus, the Commonwealth is in the same position as the
defendants in Beecher and Sandlin, who had also been sued under
alter ego rationales.  See Sandlin, 972 F.2d at 1217-1218.  As
previously discussed, Peacock supports both cases, wherein the
federal courts ultimately refused to extend enforcement
jurisdiction.  Thus, insofar as alter ego theories require
factually independent proceedings, they will not subvert the rule
of Peacock.  This rule is determinative in this case.
II.  Supplemental Jurisdiction
         In the alternative, Futura argues that its alter ego
claim is within the district court's supplemental jurisdiction
because that claim is so related to its civil rights claims against
the individual defendants, claims over which the court undeniably
has original jurisdiction, that it forms part of the same case or
controversy.  See 28 U.S.C.  1367.  We do not find this argument
persuasive.
         Although its alter ego has pre- and post-judgment
components, Futura carefully crafted the allegations in its alter
ego claim to emphasize the pre-judgment relationship between the
Commonwealth and CDC.  It stressed the close ties between CDC and
the government that existed before and during the original case.  
It did so because its only chance to penetrate Puerto Rico's
Eleventh Amendment immunity was to argue that the Commonwealth,
through its behavior in the case, waived its immunity.  Futura
recognized that, were it to rely upon the Commonwealth's post-
judgment liquidation of CDC in its alter ego claim, Puerto Rico
would have Eleventh Amendment immunity from the claim that would be
virtually unassailable, as no waiver of such immunity can be
inferred from the Commonwealth's post-judgment conduct.  Futura's
alter ego claim simply cannot be saved by the argument that it
forms part of the same case or controversy as the civil rights
claims, all of which are premised upon post-judgment conduct.  And
even if we were to agree that there existed sufficient relatedness
between Futura's claims against the individual defendants and the
post-judgment components of Futura's alter ego claim to bring these
components within our supplemental jurisdiction, the Eleventh
Amendment would, for reasons already explained, render us powerless
to grant Futura any relief against the Commonwealth.
         In any event, we do not find sufficient relatedness
between these claims because there is no common nucleus of
operative facts shared by both the civil rights claims and the
alter ego claim.  See BIW Deceived v. Local S6, Indus. Union of
Marine and Shipbuilding Workers, 132 F.3d 824, 833 (1st Cir. 1997)
(federal courts may only assert supplemental jurisdiction under 28
U.S.C.  1367 where the claims arise from the same "nucleus of
operative facts"). The claims do not overlap in theory or
chronology.  The cases are sufficiently distinct to require an
independent jurisdictional basis.  Any holding to the contrary
would be inconsistent with the jurisdictional requirements of
section 1332, and thus in direct contravention of section 1367.
         As the district court observed, the Commonwealth of
Puerto Rico "stood behind CDC in filing an action of questionable
merit in this Court, and when that backfired and resulted in an
adverse judgment of $12.3 million, it sought to preclude collection
of the same."  962 F. Supp. at 257.  Indeed the Commonwealth's
treatment of M.D. Construction/Futura throughout these proceedings
has been despicable, and may result in hesitation by contractors to
do business with public corporations funded by Puerto Rico, as well
as other dire consequences for its financial reputation. However,
federal courts are of limited jurisdiction, and may not weigh the
equities of a case until jurisdiction has been established.  SeeHercules, ___ U.S. at ___, 116 S. Ct. at 989.  In this case, Puerto
Rico, like any state, enjoys the sovereign privilege not to be sued
in federal court under diversity.  Having concluded that neither
enforcement nor supplemental jurisdiction exists over this suit, we
must turn a blind eye to any perceived injustices delivered at the
hands of the Puerto Rican government.
III.  Sua Sponte Dismissal of Futura's Other Claims
         After awarding summary judgment for Futura on the first
cause of action, the district court dismissed the six remaining
causes of action Futura had brought against individual defendants.  
Although the district court's desire to dispose of these claims is
understandable in light of its having provided for the full
satisfaction of the original judgment through its award of summary
judgment on the first cause of action, the sua sponte dismissal of
these remaining claims was premature.  Because we herein vacate the
district court's award of partial summary judgment, these remaining
claims become even more potentially significant.
         This court has held that, in limited circumstances, sua
sponte dismissals of complaints under Rule 12(b)(6) of the Federal
Rules of Civil Procedure are appropriate.  See Wyatt v. City of
Boston, 35 F.3d 13, 14 (1st Cir. 1994).  However, such dismissals
are erroneous unless the parties have been afforded notice and an
opportunity to amend the complaint or otherwise respond.  See id.;
Street v. Fair, 918 F.2d 269, 272 (1st Cir. 1990) (per curiam);
Literature, Inc. v. Quinn, 482 F.2d 372, 374 (1st Cir. 1973).  
         In this case, Futura's initial complaint contained four
causes of action against individual defendants, each a government
employee.  The individuals were sued under the Equal Protection
Clause, Due Process Clause, and for federal civil rights violations
and tortious interference with contractual relationships under
Puerto Rico law.  These causes of action were improperly pled in
the initial complaint because they contained insufficient factual
allegations to establish a causal nexus between the named
defendants' conduct and the alleged violations of law.  See 962 F.
Supp. at 257.  After receiving various motions to dismiss and a
Magistrate's Report and Recommendation that these claims be
dismissed, the district court dismissed the claims without
prejudice.  Futura then filed an amended complaint, devoting sixty
pages exclusively to detailed claims against the individual
defendants.  This amended complaint also contained two completely
new claims under the Contracts Clause and Puerto Rican tort law.  
Without any notice to the parties in this case, the district court
dismissed with prejudice all causes of action against the
individual defendants.  The district court cursorily concluded that
"the amended verified complaint does not . . . cure the defects of
the original one [because it] fails to draw a nexus between the
individual defendants and the government's scheme to preclude
payment of the judgment in his favor."  Id. at 258.
          The district court erred in dismissing these claims sua
sponte without providing the parties with notice and an opportunity
to respond.  See Wyatt, 35 F.3d at 14.  The amended complaint
contained new causes of action and more specific allegations of
fact.  Futura reasonably believed that its amended complaint
addressed the court's initial concerns, and was entitled to address
any new or continuing infirmities that the court perceived.  
Accordingly, the dismissal of these claims is reversed, and they
are remanded for further proceedings.
                           Conclusion
         For the reasons stated herein, we vacate the district
court opinion as to count one of the verified amended complaint and
dismiss that count.  We reverse the district court's sua spontedismissal of counts two through seven and remand those claims for
further proceedings consistent with this opinion.  Finally, we wish
to note again the manifest injustice of the conduct of the
government of the Commonwealth of Puerto Rico throughout this
affair.  It has cleverly used its sovereignty to shield itself from
the fair consequences of its actions, and has been aided by recent
Supreme Court doctrine.  Peacock, however, is a relatively new
case, and circuit courts are applying it differently.  Cf. Matos v.
Richard A. Nellis, Inc., 101 F.3d 1193, 1195 (7th Cir. 1996)
(remarking that after Peacock, it is "not altogether clear" in
which types of federal litigation an independent ground of
jurisdiction is necessary to pierce the corporate veil).  As the
doctrine of enforcement jurisdiction evolves, perhaps fewer unjust
consequences will flow from it.  This case might be well-served by
the Supreme Court's attention.
         No costs.

</body>

</html>